STATE v. ED BURNETTE.

(Filed 21 February, 1917.)

1. **Judgment Suspended—Conditions—Waiver—Intoxicating Liquors—Criminal Law.**

A defendant who has been convicted of selling intoxicating liquors in violation of our prohibition laws before a court of competent jurisdiction may waive his right of appeal and consent to a judgment suspending the sentence upon condition that he appear before the court from time to time and show that he has not since violated the law.

2. **Same—Orders—Execution of Sentence—Courts—Jurisdiction—Statutes.**

A trial justice, under the statute, is but the presiding officer of his court, and where the court has suspended judgment against the prisoner upon condition that he report to the court from time to time and show his good behavior, he may not thereafter cause the defendant to be imprisoned or sent to the roads for violating the conditions imposed, except in open court regularly sitting for the transaction of business, and the court must afford him opportunity to be heard, and to employ counsel, if he so desires; and a proceeding held privately in the office of the justice, wherein he attempts to order the execution of the judgment, is without warrant of law and of no effect.

3. **Courts—Proceedings—Presumptions—Regularity—Habeas Corpus.**

Proceedings before a court of competent jurisdiction will be presumed to be regular and valid, unless upon their face they plainly appear to be void; and when they do not so appear, they are not subject to review in *habeas corpus* proceedings.

4. **Same—Jurisdiction—Suspended Judgment—Intoxicating Liquors—Judge—Sentence.**

The rule that the proceedings of a court of competent jurisdiction are not reviewable in *habeas corpus* proceedings does not apply when it appears that the justice before whom the case had been determined had convicted the applicant of violating the prohibition law; suspended judgment upon condition of good behavior, and ordered the execution of the sentence and the arrest of the defendant in proceedings privately had in his office, and not in open court, as the law requires.

5. **Judgment Suspended—Conditions—Good Behaviour—Sentence—Unlawful Procedure—Appeal and Error.**

It appearing in this case that the trial court suspended judgment in a criminal action upon certain conditions, without adjudication of the fact whether the defendant had complied therewith, and had ordered the execution of the sentence and the arrest of defendant without warrant of law, it is *Held*, that the defendant give a bond in a certain sum for his appearance before the criminal court at a time to be fixed by it, giving him reasonable opportunity to be heard, employ counsel, etc.; and in default of his giving the bond, the court issue a warrant or capias for the purpose of investigation.

**6. Appeal and Error—Criminal Law—Habeas Corpus—Evidence—Certiorari.**
    Evidence or other matters adjudicated in a criminal case will not be
    reviewed by the Supreme Court on appeal in *habeas corpus* proceedings;
    but only the jurisdiction of the court and the validity of the judgment.
    In this case the Attorney-General waived the irregularity, and by agree-
    ment it was regarded as if upon a formal return to a writ of *certiorari.*

APPEAL from an order of *Bond, J.,* refusing to discharge the defend-
ant in a habeas corpus proceeding, heard 5 August, 1916, from PASQUO-
TANK.

The defendant was charged before the criminal court of Pasquotank
County with importing into the State from another State more than one
quart of intoxicating liquor, and also with having in his possession a
quantity of such liquor in excess of one gallon, for the purpose of sale,
contrary to the statute.   The case was heard by the court and the defend-
ant was convicted.   He was sentenced to work on the public roads, in the
first case, for one month, and in the second case for three months.   He
appealed, and afterwards abandoned his appeal, with the understanding
that he should pay a fine of $200 in the first case, which he did, and that
judgment would be suspended in the other case and he be required to
appear on the first of April, 1916, and every three months thereafter for
one year and show that he had not violated the law regulating the im-
portation and use of intoxicating liquors.   Judgment was suspended
accordingly.   The following facts were found by the judge and stated
in the case   "The defendant, when three months were out, started to
see the trial justice and to show that he had had no dealings with liquor,
when he was met by the said trial justice and told that 'it was all right,
and he could go.'   The defendant understood from this that he was
released from further attending court.   On the 1st day of August, 1916,
while the defendant was at his work on the streets of Elizabeth City,
he was taken into custody by one of the policemen of Elizabeth City and
carried into the private law office of the trial justice, who is a practicing
attorney in Elizabeth City, and after hearing certain statements of
policemen, was sentenced to the common jail of Pasquotank County, and
in a few minutes was taken to the public roads and there worked with
convicts.   No testimony was produced of any selling or having for sale
any liquor since the judgment was suspended.   There was no hearing in
court, except as above stated, and the defendant had no counsel to take
any steps for his defense.   The act creating the criminal court, chapter
180, Public Laws 1907, directs that the court shall be held at the court-
house or at the town hall.   Said act is made part of these findings, for
reference.   The defendant had been living in Elizabeth City from the
time of his conviction to the time of his arrest, draying on the streets
and passing by the policemen of Elizabeth City and the trial justice

every day. He had not dealt with liquor from 18 December, 1915, to 1 August, 1916, so far as any evidence appeared. Nothing more than enough to create some suspicion on the part of policemen."

The judge refused to discharge the defendant, and the latter appealed, and was released from custody on a bail bond of $75, conditioned to abide with the result of the appeal.

*Attorney-General Manning and Assistant Attorney-General Sykes for the State.*

*Aydlett & Simpson and C. W. Brown for defendant.*

WALKER, J., after stating the case: The Legislature, by Public Laws 1907, ch. 180, created and established the criminal court of the county of Pasquotank, presided over by a trial justice, and gave it jurisdiction of criminal cases therein specified, the offenses charged against the defendant being of the prescribed class. When the defendant, upon his conviction in that court of unlawfully importing spirituous liquor into this State, and of having in his possession for sale more than one gallon of such liquor, consented to waive his right of appeal and also consented to a suspension of the judgments upon the terms and conditions stated therein, he was bound by his consent thus given, and the proceedings up to this stage of the case were regular and valid and according to established precedents. *S. v. Crook,* 115 N. C., at p. 760; *S. v. Everitt,* 164 N. C., 399; *S. v. Hilton,* 151 N. C., 687; *S. v. Tripp,* 168 N. C., 150. The matter is so fully considered in those cases that we deem it useless to attempt any further discussion of it. Defendant did not question the power of the court to suspend the judgments in the criminal prosecutions upon the terms imposed, but when he was brought before the justice of the criminal court for the purpose of enforcing the suspended judgments, he sued out a writ of *habeas corpus* and attacked the validity of the sentence upon the ground that there was, in law, no real investigation of the question as to whether the defendant had violated the terms of the suspension. If those proceedings were merely irregular or erroneous, they cannot be assailed collaterally by the writ of *habeas corpus,* and in order to do so defendant must show that they are absolutely void and of no effect in law. *Ex Parte McCown,* 139 N. C., 95. It was there said: "We cannot decide whether there was any merely erroneous ruling of the court or any irregularities in respect to judgment and procedure, as the writ of *habeas corpus* can never be made to perform the office of a writ of error or of an appeal. We are confined in our investigation to the question of jurisdiction or power of the judge to proceed as he did, and cannot otherwise pass upon the merits of the controversy. There must have been a want of jurisdiction over the

person or the cause or some other matter rendering the proceeding void, as this is the only ground of collateral attack. The law in this respect has been definitely settled, we believe, by all the courts." *Ex Parte Terry,* 128 U. S. 289; *Ex Parte Savin,* 131 U. S., ·267; Rapalje on Contempts, sec. 155. The Court held in *Ex Parte Reed,* 160 U. S., 13, that a writ of *habeas corpus* cannot be made to perform the functions of a writ of error, and "to warrant the discharge of the petitioner the judgment under which. he is held must be not only erroneous, but absolutely void." In this case, therefore, the range of our inquiry is narrowed to the question of jurisdiction and the legal validity of the sentence in other respects. If the proceedings were either irregular or erroneous, the remedy is not by *habeas corpus,* and if they do not appear plainly on their face to be void, we should presume that they are valid until the contrary is shown, as the principle is that "Where acts are of an official nature, or require the concurrence of official persons, a presumption arises in favor of their due execution. In these cases the ordinary rule is *omnia præsumunter, etc.:* everything is presumed to be rightly and duly performed until the contrary is shown." Broom's Legal Maxims, 909.

But while this is the general rule, we must inquire as to the jurisdiction of the court to proceed in the cause, and in doing so here we may properly start from the suspension of the judgment, as there is nothing in controversy back of it. A careful perusal of the statute creating ·the criminal court of Pasquotank County leads us to the conclusion that the Legislature never intended that important proceedings such as the one under review in this case should be conducted by the trial justice (who is merely its presiding officer) except in open court, while the court is regularly sitting for the transaction of its business, and the order for the appearance of the· defendant at stated intervals, under the suspended judgment, and his showing that he had obeyed the law as to the possession and transportation of liquor was intended to require his appearance in open court; and it was further the purpose that the ·investigation should be publicly conducted there, and the proceeding before the trial justice acting privately in his office was not warranted by the law and was of no effect. It was not without some reluctance that the practice of· suspended judgments upon certain conditions was sanctioned, and it was only done because of its being beneficial to the prisoner, and further because his rights may be properly safeguarded. The proceedings to enforce suspended judgments should, therefore, be had in open court, where he will have fair and reasonable opportunity, with the aid of· counsel, if he desires it, to show that he has not violated the terms of the suspension, and where his other rights may be preserved by a public

47—173

hearing. The trial jutice does not sit as a committing magistrate to bind the prisoner over to court, but as the presiding officer of the court regularly organized as provided by the statute. He is but an integral part of the court, and in his individual person does not embody its corporate authority. The court must act as a court, and not merely the individual who is appointed by law to preside over it. The defendant was entitled to a public hearing in the court, and this he has not had. There was intimation substantially to this effect in *S. v. Tripp,* 168 N. C., at pp. 152, 153, where it was said: "The power of the court, having jurisdiction, to suspend judgment on conviction in a criminal case for determinate periods and for a reasonable length of time has been recognized and upheld in several decisions of our Court, as in *S. v. Everitt,* 164 N. C., 399; *S. v. Hilton,* 151 N. C., 687; *S. v. Crook,* 115 N. C. pp. 760, etc.; and we see no good reason why it should not be intrusted to the sound discretion of these municipal courts. It may be well to note that while it has been sanctioned in this State to a somewhat greater extent than it existed at common law, there has been decided intimation given in some of the cases that the practice should not be hastily enlarged, as it may be susceptible of great abuse to the injury of the citizen. Thus, in *Hilton's case* the Court said: 'In this State, as shown in *Crook's case, supra,* the power to suspend judgment and later impose sentence has been somewhat extended in its scope, so as to allow a suspension of judgment on payment of costs, or other reasonable condition, or continuing the prayer for judgment from term to term to afford defendant opportunity to pay the cost or make some compensation to the party injured, to be considered in the final sentence, or requiring him to appear from term to term, and for a reasonable period of time, and offer testimony to show good faith in some promise of reformation or continued obedience to the law. These latter instances of this method of procedure seem to be innovations upon the exercise of the power to suspend judgment as it existed at common law; and while they are well established with us by usage, the practice should not be readily or hastily enlarged or extended to occasions which might result in unusual punishment or unsual methods of administering the criminal law." While the proceedings are not valid, this does not necessarily entitle the petitioner to an absolute discharge, as the court may hold him to bail in order that he may answer, in a proper way, the allegation that he has violated his parole or the conditions of his release. It does not appear that he reported to the court at each of the times appointed for his appearance, and showed that he had complied with the conditions of the suspension of judgment. We, therefore, direct that he give bond in the sum of $100 for his appearance before the criminal court of Pasquotank County at a time to be fixed by that court for the investigation of the

matter, when he may have the benefit of counsel, if desired, and a reasonable opportunity to be heard in his defense, and so that then and there the case may further proceed agreeably to the forms and requirements of the law. If the defendant does not furnish bail as herein required, the criminal court may issue a warrant or capias to bring him before the court for the purpose of the investigation, giving him reasonable opportunity to be heard by counsel, if desired, and otherwise respecting his constitutional rights.

An appeal does not lie from a judgment or order in a *habeas corpus* proceeding like this one, but the Attorney-General very properly agreed to waive this irregularity and to treat the appeal as it were a formal return to a writ of *certiorari* which had regularly been issued from this Court, upon application therefor by the petitioner. And we have so dealt with it. This course was taken and approved by us in *Ex Parte McCown,* 139 N. C., 95. See, also, *In re Holley,* 154 N. C., 163; *S. v. Dunn,* 159 N. C., 470. As held in the case last cited, we cannot review the evidence or other matters in a criminal case in *habeas corpus* proceedings, but only the jurisdiction of the court and the validity of the judgment which is attacked, and we have not attempted to do so.

There was error in the ruling of the judge, and the case will be remanded with directions to proceed in the original case as herein indicated. The State will recover costs in this Court, to be taxed by the clerk, against defendant and his sureties.

Modified.