IN RE DUANE HALL.

January Term, 1927.

Present:  WATSON, C. J., POWERS, SLACK, FISH, and MOULTON, JJ.

Opinion filed February 2, 1927.

*Habeas Corpus—Criminal Law—G. L. 7305—Nature of Inquiry as to Whether Probationer Has Violated Terms of Probation—Power To Suspend Sentence and Place on Probation Not Infringement on Governor's Pardoning Power—Power To Revoke Suspension of Sentence—Commitment to Probation Officer Not Penal—Period Person in Charge of Probation Officer Not Counted on Sentence—G. L. 7241 Not Applicable to Probationers.*

1.  On petition for writ of *habeas corpus*, claim that petitioner had been deprived of his liberty without due process of law, in that he was denied hearing upon question of his breach of probation, *held* not sustained by record showing that court imposing original sentence inquired summarily into his conduct subsequent to release on probation, and, being satisfied that he had violated certain of conditions of probation, had committed him on original sentence.

2.  Provision of G. L. 7305 that probationer charged with violation of terms and conditions of his probation shall be forthwith brought before court wherein he was convicted, or judges thereof, and such court or judges shall inquire summarily into his conduct subsequent to release on probation, means

that such inquiry shall be speedy and informal, unhampered by procedure incident to common law trial.

3. G. L. 7299, giving authority to court before which person is being prosecuted for crime upon his conviction after passing sentence on accused, to suspend all or part of such sentence, and place such person in care and custody of State probation officer, *held* not to infringe upon constitutional prerogative of Governor to issue pardons or conditional paroles.

4. Court imposing sentence on person convicted of crime, having suspended sentence and placed petitioner upon probation for definite term in accordance with G. L. 7299, *held* to have jurisdiction to revoke such suspension upon proper cause being found, under authority contained in G. L. 7305.

5. Where court imposing sentence on person convicted of crime, placed prisoner upon probation for definite time and committed him to custody of State probation officer in accordance with G. L. 7299, commitment to probation officer was not penal in character.

6. Under such circumstances, period during which such person was in custody of probation officer is not to be counted as time during which he was undergoing punishment imposed upon him.

7. Privilege of obtaining deduction from sentence, under G. L. 7241, is extended only to persons confined in State prison in execution of sentence, and does not apply to those on probation.

PETITION to the Supreme Court of Windham County by Duane Hall for a writ of *habeas corpus* to secure his discharge from the State prison at Windsor. The opinion states the case. *Petition dismissed.*

*William W. Lapoint* for the petitioner.

*J. Ward Carver*, Attorney General, and *T. Tracy Lawson*, for the State.

MOULTON, J. This is a petition for a writ of *habeas corpus*. It appears that the petitioner was on December 17, 1920, convicted of the crime of rape by the municipal court of Bellows Falls, and was sentenced to be confined at hard labor in the State prison in Windsor for not less than five years, and not

more than seven years, and to pay a fine and costs. The execution of the sentence of imprisonment was ordered suspended, upon the payment of a certain part of the fine, and the petitioner was committed to the charge of the State probation officer for the term of seven years from the date of his conviction, upon certain conditions as to his behavior, not necessary here to set forth. On April 22, 1925, he was charged, by one of the deputy probation officers, with a violation of the terms and conditions of his probation, and was brought before the municipal court, which after having inquired summarily into his conduct subsequent to his release on probation, found that he had violated certain conditions thereof, and committed him to the State prison on his original sentence of imprisonment, there to "remain until the expiration of his sentence, or until he is otherwise discharged in accordance with law." The mittimus issued recited the above facts, and is set forth in full in the petition, and therein is also contained an allegation that the fine and costs were paid, and a denial of any violation of the conditions of probation.

[1]  The petitioner contends that he has been deprived of his liberty without due process of law, in that he was denied a hearing upon the question of his breach of probation. As to this, however, it is sufficient to say that the fact does not so appear. No evidence was taken in support of the petition and the only basis for the claim is the recital of the record, contained in the petition, that upon being brought before the court by the deputy probation officer, "the court having inquired summarily into the conduct of the said Duane Hall, subsequent to his release on probation, and the court being satisfied that the said probationer Duane Hall has violated certain conditions of his said probation, it is therefore ordered" that he should be committed to the State prison.

[2]  G. L. 7305 provides that where a probationer is charged with violation of the terms, and conditions of his probation, he shall be forthwith brought before the court, wherein he was convicted, or the judges thereof, and such court or judges "shall inquire summarily into the conduct of the probationer subsequent to his release on probation." This means that such inquiry shall be speedy and informal, unhampered by the procedure incident to a common law trial. *In re McAllister*, 97 Vt. 359, 361, 123 Atl. 207. And as in that case, so in this, nothing has been called to our attention to show that the hearing ac-

corded the petitioner fell short of that contemplated by the statute.

The petitioner further claims that the action of the court in suspending the execution of the imprisonment part of the sentence was in the nature of a conditional parole and an encroachment upon the exclusive prerogative of the governor, as provided in Ch. II, section 20 of the Constitution of this State; and contends that, being without authority so to act, the court lost control of the prisoner, and could not thereafter legally order his commitment to prison.

Upon the question whether a Court has the inherent power to suspend the execution of a sentence indefinitely, the authorities are in conflict. See *Ex parte United States*, 242 U. S. 27, 61 L. ed. 129, 142, 143, 37 Sup. Ct. 72, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355, and cases therein cited. But it is not material to discuss this proposition, because the issue in the instant case arises under the statute (G. L. 7299) providing that, in a proper case, the court

> "shall pass sentence upon the accused, if he is convicted, and may then suspend all or part of such sentence, and place the person so convicted and sentenced in the care and custody of the state probation officer upon such conditions and for such time as it may prescribe * * * * * *."

It is generally held that statutes which confer upon a court the power to suspend execution of sentence, and commit the respondent to the custody of the probation officer are valid, and do not contravene the constitutional provisions which vest the pardoning power in the executive. *Richardson* v. *Commonwealth*, 131 Va. 802, 109 S. E. 460, 462; *State ex rel. Tingstad* v. *Starwich*, 119 Wash. 561, 206 Pac. 29, 31, 26 A. L. R. 393; *Ex parte Giannini*, 18 Cal. App. 166, 122 Pac. 831, 832; *People ex rel. Forsyth* v. *Court of Sessions*, 141 N. Y. 288, 36 N. E. 386, 23 L. R. A. 856, 858; *Belden* v. *Hugo*, 88 Conn. 500, 507, 91 Atl. 369, 371. In the case last cited it is said:

> "In passing upon this question, it is important that we gain a correct conception of the character of that which the statute authorizes the courts to do in the matter of stays of execution. In no true sense is it an exercise of the pardoning power * * * * * * * * * *. The General Assembly defines the punishments which may be imposed and it may gather around those punishments such incidents or conditions as it may deem wise. Statutes which prescribe these

incidents or conditions, although general in their application, are dealing with the punishment and their provisions enter into and form a part of it. * * * * *. When some such provision results in a * * * * stay of execution with a probation commitment, that result does not have its source in an exercise of the pardoning power. It comes in the due course of the operation of the sentence under the provisions of law which prescribe what it may be and its incidents. In this view of the matter there can be no doubt as to the competency of the General Assembly to legislate as it did in the probation statute and to attach to or incorporate into punishments authorized to be imposed the conditions it embodies.''

In *Ex parte United States,* 242 U. S. 27, 61 L. ed. 129, 145, 37 Sup. Ct. 72, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355, after holding that the United States District Courts possessed no inherent power indefinitely to suspend the execution of a sentence, the validity of probation statutes was distinctly recognized, Chief Justice White saying:

''And, so far as the future is concerned, that is, the causing of the imposition of penalties as fixed to be subject, by probation legislation or such other means as the legislative mind may devise, to such judicial discretion as may be adequate to enable courts to meet by the exercise of an enlarged but wise discretion the infinite variations which may be presented to them for judgment, recourse must be had to Congress, whose legislative power on the subject is in the very nature of things adequately complete.''

To the same effect is *State* v. *Sturgis,* 110 Me. 96, 85 Atl. 474, 478, 43 L. R. A. (N. S.) 443, wherein it is said that, after sentence has been pronounced, the court has no power (unless so authorized by statute) to make an order the result of which would be to cause an indefinite suspension of execution thereof. And in *Richardson* v. *Commonwealth, supra,* 131 Va. 809, 100 S. E. 460, 462, the Court says:

''Possibly the idea that such sentences constitute an invasion of the pardoning power of the Governor is based upon an erroneous view of the true effect of suspending execution of a sentence. By the very term used it is not a pardon, excuse, immunity or relief, * * * but a mere suspension or postponement of its execution.''

[3, 4]   We hold therefore, on the strength of the above authorities, that G. L. 7299, so far as here involved, does not infringe upon the constitutional prerogative of the Governor to issue pardons or conditional paroles (See *In re Conditional Discharge of Convicts,* 73 Vt. 414, 420, 51 Atl. 10, 56 L. R. A. 658), and that the action of the municipal court, in this case, in suspending the execution of the sentence of imprisonment, and at the time of sentence placing the petitioner upon probation for a definite term was valid; and that, having done so, the petitioner was not beyond the jurisdiction of the court to revoke such suspension upon proper cause being found.

Finally the petitioner claims that he is entitled to credit upon his sentence for the four years and four months during which he was in the hands of the probation officer; that computing this time with that during which he has been in actual confinement in prison, the minimum period of his sentence has expired; and that, with the deduction allowed by statute for good behavior, to which he claims to be entitled during the period of probation, his maximum period of imprisonment has been served; and, therefore, in either case, that he is entitled to his enlargement.

[5]   But the commitment to the probation officer was not penal in character.   *Marks* v. *Wentworth,* 199 Mass. 44, 85 N. E. 81, 82.   As is said in *Belden* v. *Hugo,* 88 Conn. 500, 504, 91 Atl. 368, 370, such commitment—

> "is not ordered for the purpose of punishment for the wrong for which there has been a conviction, or for general wrongdoing.   Its aim is reformatory and not punitive.   It is to bring one who has fallen into evil ways under oversight and influences which may lead him to a better living.   The end sought is the good of the individual wrongdoer, and not his punishment.   Underlying the act of commitment is the hope that it may prove that punishment will be unnecessary, and that its stigma may be avoided.   A sentence partakes of an essentially different character.   It is the judgment of the court formally pronounced 'awarding the punishment to be inflicted.'   Black's Law Dictionary 1071. It deals out punishment, and one of its underlying aims is to cause its subject to suffer for the wrong he has done."

[6]   Thus it is clear that the period during which the petitioner was in the custody of the probation officer is not to be counted as time during which he was undergoing the punishment

imposed upon him. The execution of his sentence did not come into operation until his commitment, after the finding by the court that the terms and conditions of his probation had been violated. *Belden* v. *Hugo,* 88 Conn. 500, 91 Atl. 368, 371. G. L. 7305 provides that where after summary inquiry the court or judges are satisfied that the probationer has violated any of the conditions of his probation "said court or judges may order him committed upon his original sentence." The language of the statute above quoted plainly indicates the legislative intent that no part of the sentence should be included within the period of the surveillance by the probation officer. *Ex parte Giannini,* 18 Cal. App. 166, 122 Pac. 831, 832. No good reason appears why in this respect the same rule should not obtain as in the case of conditional parole, where the time in which the convict has been at large under such parole is not to be treated as time served upon his sentence. *In re McKenna,* 79 Vt. 34, 35, 64 Atl. 77.

[7] The privilege of obtaining a deduction from a sentence is, by G. L. 7241, extended only to persons confined in the State prison in execution of a sentence and their release therefrom expedited thereby upon the certificate of the superintendent of the prison with the approval of the Governor. It is clear that this statute has no application here.

*It is adjudged that the petitioner is not illegally deprived of his liberty, and he is remanded to the State prison whence he was taken, and his petition is dismissed.*